IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

STATE OF WASHINGTON, )    No. 77682-7-I
                     )
          Respondent, )
                     )
          v. )
                     )    UNPUBLISHED OPINION
GLENN WELDON LEGG, )
                     )    FILED: April 22, 2019
          Appellant. )

VERELLEN, J. — Glenn Legg rushed at Mark Fisher while yelling and screaming and continued to do so while standing mere feet away before slashing Fisher's forehead with a knife. Because Legg acted provocatively in the lead up to his fight with Fisher, the court properly instructed the jury about a first aggressor. Therefore, we affirm.

## FACTS

Mark Fisher, a homeless man, dozed in his sleeping bag in picnic shelter number three at the southern end of Woodland Park when Glenn Legg startled him awake yelling, "You took my seat. You took my spot. You took my seat."[1] Legg, who was 50 to 60 feet away when he began yelling, quickly reached and entered the picnic shelter. Fisher stood up and, within 30 seconds, Legg slashed

[1] Report of Proceedings (RP) (Oct. 18, 2017) at 178, 180, 182-84.

Fisher's forehead with a knife. Fisher, a larger and stronger man than Legg, wrestled him to the ground and held him until the police arrived. Legg was arrested, and the men were treated at different hospitals for superficial injuries.

Legg was charged with committing second degree assault with a deadly weapon. He requested, and the court granted, a self-defense instruction. In response, the State requested a first aggressor jury instruction. The court granted the request. The jury found Legg guilty, and the court sentenced him to 41 months' incarceration.

Legg appeals.

## ANALYSIS

As a mixed question of law and fact, we review a court's decision to provide a first aggressor instruction de novo.[2]

The first aggressor instruction reflects the general principal that a defendant may not invoke the right to defend himself where he provoked the altercation.[3] A first aggressor instruction is appropriate where a defendant invokes the right to self-defense and there is credible evidence from which a jury can reasonably determine that the defendant created the need to defend himself.[4] The party

---

[2] State v. Bea, 162 Wn. App. 570, 577, 254 P.3d 948 (2011); see State v. Samalia, 186 Wn.2d 262, 269, 375 P.3d 1082 (2016) (reasoning that an issue on appeal presents a mixed question of law and fact "because we are required to apply legal principles to a particularized set of factual circumstances").

[3] State v. Riley, 137 Wn.2d 904, 912, 976 P.2d 624 (1999); 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 16.04, at 256 (4th ed. 2016).

[4] Riley, 137 Wn.2d at 909-10.

requesting the instruction—here, the State—must produce credible evidence to warrant it.[5] We consider the evidence in the light most favorable to the requesting party.[6]

A court properly instructs the jury about a first aggressor where "'(1) the jury can reasonably determine from the evidence that the defendant provoked the fight, (2) the evidence conflicts as to whether the defendant's conduct provoked the fight, or (3) the evidence shows that the defendant made the first move by drawing a weapon.'"[7] The provocative act—because words alone will not suffice—must be both predicate and related to the charged crime.[8]

Legg argues the instruction was improper because he merely exchanged words with Fisher and did not perform a provocative act before the attack. Because the uncontested testimony is that Legg did not show his knife until the attack, the aggressor instruction was appropriate if the State presented credible evidence showing Legg acted provocatively in the lead-up to the fight.[9]

After being woken by Legg's "loud and confrontational" voice, Fisher remained in his sleeping bag until Legg entered the picnic shelter.[10] Upon seeing

---

[5] State v. Richmond, 3 Wn. App. 2d 423, 432-33, 415 P.3d 1208 (2018).

[6] Bea, 162 Wn. App. at 577.

[7] Richmond, 3 Wn. App. 2d at 432 (quoting State v. Anderson, 144 Wn. App. 85, 89, 180 P.3d 885 (2008)), review denied, 191 Wn.2d 1009, 424 P.3d 1223 (2018).

[8] Id. at 433; State v. Sullivan, 196 Wn. App. 277, 290 n.23, 383 P.3d 574 (2016) (quoting State v. Wasson, 54 Wn. App. 156, 159, 772 P.2d 1039 (1989)).

[9] Id. at 432.

[10] RP (Oct. 18, 2017) at 186.

Legg, Fisher believed "he's going to attack me."[11] Fisher testified that he "jumped up real quick, you know, to defend myself" from the man "yelling and screaming at me" while standing "maybe two, three feet" away.[12] Another eyewitness, a park maintenance worker, testified that the men were arguing before the fight.

Contrary to Legg's argument, yelling and behaving menacingly are acts. In State v. Anderson,[13] a daughter saw her mother's boyfriend leaning over her seated mother with his hands on the arms of the mother's chair while yelling in her mother's face, and the daughter grabbed a steel bar and told the boyfriend to stop. The boyfriend then pointed a shotgun at the daughter, and a fight ensued.[14] The boyfriend was charged with second degree assault and argued that he acted in self-defense.[15] The trial court gave an instruction on self-defense and a first aggressor instruction.[16] Because the boyfriend's conduct provoked the daughter into grabbing the steel bar and telling him to stop, the court upheld the use of the first aggressor instruction.[17]

Like the boyfriend, Legg did more than speak. He rushed toward Fisher while yelling and screaming, stood very close to him while continuing to yell and

---

[11] Id.

[12] Id. at 186-87, 197.

[13] 144 Wn. App. 85, 87, 180 P.3d 885.

[14] Id. at 87-88.

[15] Id. at 88.

[16] Id.

[17] Id. at 90.

scream, and conducted himself so as to make the larger man feel threatened and afraid. Because the State presented credible evidence of provocative acts directly leading to the fight between Legg and Fisher, the court did not err in giving the first aggressor instruction.

Therefore, we affirm.

WE CONCUR: